JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Shawn Charles Goff,

                 Plaintiff,

v.

Trinity Services Group, et al.,

                 Defendants.

No.  CV 21-00702-PHX-DLR (JFM)

**ORDER**

On April 16, 2021, Plaintiffs Shawn Charles Goff, Cleveland Yarrow Cook, Dino Joseph Bennetti, Steven A. Benavidez, Matt Lester, Elia MN Holguin, Johnny Portillo, and Tonatihu Aguilar, all of whom are confined in the Arizona State Prison Complex-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. *Goff v. Trinity Services Group*, CV 21-00670-PHX-DLR (JFM).  Plaintiff Goff filed an Application to Proceed In Forma Pauperis.  In an April 23, 2021 Order, the Court severed the case into individual actions, one for each Plaintiff; directed the Clerk of Court to open a separate action on behalf of each Plaintiff, assign a case number to each individual action; and file the Complaint and the Order in each individual case; gave each Plaintiff 30 days to file an amended complaint in his individual case asserting only his claims and omitting allegations regarding the other Plaintiffs; and dismissed CV 21-00670.  This case was opened on behalf of Plaintiff Goff (hereinafter, "Plaintiff"), and his Application to Proceed In Forma Pauperis (Doc. 3) was docketed in this case.

On April 30, 2021, Plaintiff filed his First Amended Complaint (Doc. 7).  The Court

TERMPSREF

will grant the Application to Proceed and require Defendants Trinity, Keefe, and Shinn to answer portions of the First Amended Complaint.

**I.      Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for

relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III.     Discussion of First Amended Complaint

### A.     Plaintiff's Allegations

In his two-count First Amended Complaint, Plaintiff names as Defendants Trinity Services Group, Inc. ("Trinity"), Keefe Commissary Network, LLC ("Keefe"), Arizona Department of Corrections (ADC) Director David Shinn, and Facility Health Administrator Amber Puckett.  Plaintiff asserts claims regarding his conditions of confinement.  He seeks declaratory, injunctive, and monetary relief, as well as his costs and fees associated with this case.

In **Count One**, Plaintiff alleges that Defendant Trinity, which provides meals to ADC prisoners, "has been steadily [and] continuously stripping away nutritious, vitamin and mineral-rich foods" at the direction of, and "in collusion" with, former ADC Directors Charles L. Ryan and Dora Schriro and Defendant Shinn.  Plaintiff asserts that during the tenures of Defendants Trinity and Keefe, Trinity's parent company, all menu changes have resulted in the loss of more nutritious foods with complex calories and replacement with less nutritious foods that are almost entirely processed with empty calories that have little or no "actual" vitamin and mineral content.  Plaintiff claims the processed foods he is served have been proven to cause various cancers, illnesses, cognitive decline, "an absolute explosion of diabetes" among ADC prisoners, and bone, joint, ligament, and tendon deterioration.  Plaintiff further alleges that Defendant Keefe sells and provides products on

1   its commissary lists that contain harmful chemicals, such as methylparabens and

2   propylparabens, which are known to cause diminished brain function.  Plaintiff asserts the

3   shampoo provided to indigent prisoners, like Plaintiff, is one such product.

4       Plaintiff alleges that Defendant Trinity's nutritionists, dieticians, doctors, and

5   clinicians have the training and knowledge that the steady progression from foods rich in

6   vitamins and minerals to foods low in them would "definitely be cheaper, raise company

7   profits, [and] potentially cause greater health problems" among prisoners.  Plaintiff asserts

8   that Defendant Trinity has continued "shorting" meals since he filed his Complaint in

9   another civil rights proceeding in this Court,[1] and Defendants Trinity and Keefe have

10  created the common fare meal, which combines the vegan and kosher diets into one diet

11  and further reduces calories.   Plaintiff asserts Defendant Shinn issued a Director's

12  Instruction that notified prisoners that the common fare meal would replace the vegan and

13  kosher diets as of August 1, 2020.

14      Plaintiff alleges that within the first 30 days after the implementation of the common

15  fare meal, Defendant Trinity began to remove listed menu items.[2]  To cite one example,

16  Plaintiff asserts that from September to October 2020, Defendant Trinity "arbitrarily"

17  removed hummus from the menu and replaced it with ¼ cup of plain beans "simply because

18  [it is] cheaper."  Plaintiff claims that on March 13, 2021, he and other prisoners who have

19  the common fare diet, went on a hunger strike in an attempt to "get both ADC personnel

20  [and] Defendants to follow their own menu."  The hunger strike ended on March 16, 2021,

21  when non-party Sergeant Cordova threatened to put the prisoners on suicide watch.

22  Plaintiff alleges that ADC and Defendant Trinity have not corrected the remaining items

23  that continue to be shorted.

24      Plaintiff claims the ultra-processed food Defendants Trinity and Keefe provide to

25  ADC prisoners are well known to contain harmful carcinogens, including all processed soy

26  _____

27  [1] *See Goff v. Trinity Food Service*, CV 20-01288-PHX-DLR (JFM).

28  [2] Plaintiff provides a lengthy recitation of the items that were removed or reduced, the specifics of which are not relevant to the Court's analysis and is therefore omitted.

and meat[3] products, and harmful pesticides used on produce.  Plaintiff alleges the "sheer biological harm" caused by ADC and Defendants Trinity and Keefe's products is "overwhelmingly proven by Evidence Based Nutritional Science."[4]

Plaintiff alleges that Defendant Puckett, as Facility Health Administrator, is tasked with the "administrative oversight of inmate health care, which shall include diagnos[is]; care [and] treatment; prevention [and] education in the areas of physical, mental, dental, environmental health, clinical dietetics, [and] nutrition."  Plaintiff asserts it is Defendant Puckett's job to not only review and approve prisoner meal plans but also regularly inspect and train *staff* to correct deficiencies.  Plaintiff claims he "did his grievance exhaustion" from November 3, 2020 through December 11, 2020, "without result."  Plaintiff alleges he notified Defendant Puckett about these issues by submitting a Health Needs Request on March 14, 2021, during his hunger strike.

Plaintiff asserts that Defendants Trinity and Keefe short prisoners' meals to save costs, make up for theft by prisoners and Defendants' employees, and increase profits.  Plaintiff claims that each new menu implemented during Defendants' "collective tenures" resulted in a decrease in the cost of meals and an increase in their profits.  Plaintiff alleges that deliberate shorting of nutritious foods, resulting in loss of key vitamins, minerals, and proteins, has caused him to suffer unnecessary weight loss; diabetic symptoms; inability to properly heal and fight off infection; joint, bone, and ligament degeneration; increased severe joint pain; and "known potential cancer risks."

In **Count Two**, Plaintiff alleges that he is an "approved [and] recognized" member of the Wiccan faith.  On March 31, 2007, he was approved for the ovo-lacto vegetarian diet, which allowed egg and milk products that are required under his Wiccan faith.  In 2008, Plaintiff was "forced against [his] will" to become a lacto-only vegetarian, and in 2012, he was "forced" to become vegan, which Plaintiff claims violated his First

---

[3]  It is unclear why Plaintiff refers to meat products inasmuch as he alleges that common fare is vegan.

[4]  Plaintiff cites various reports, studies, and other publications that he contends prove Defendants products cause harm.

Amendment right of freedom of religion.  On August 1, 2020, Plaintiff was forced to adopt the common fare diet, which combines the vegan, kosher, and religious diets.  Plaintiff claims this was done solely to condense meals and make them cheaper and served no penological *security* interest.  Plaintiff asserts this also violated the "very real religious differences" between Pagan and Jewish doctrines.  He alleges that forcing him to consume food blessed by the rabbi "is beyond offensive."

Plaintiff asserts he is expressly prohibited by ADC policy from having, receiving, purchasing, or consuming egg and dairy products, and if he does, then he loses his religious diet.  As his injury, Plaintiff claims he has been denied his right to practice his sincerely held religious beliefs by observing the Wiccan tradition of using eggs, milk, and honey as offerings in rituals to call upon deities and to maintain health, homeopathic healing, and fertility rites essential to the Wiccan faith.

**B.    Dismissal of Duplicative Claims and Allegations**

An in forma pauperis complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under 28 U.S.C. § 1915(e).  *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *Aziz v. Burrows*, 976 F.2d 1158 (9th Cir. 1992) ("district courts may dismiss a duplicative complaint raising issues directly related to issues in another pending action brought by the same party").

On June 25, 2020, Plaintiff filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 in *Goff v. Trinity Services Group*, CV 20-01288-PHX-DLR (JFM).  In the Complaint in CV 20-01288, Plaintiff named as Defendants, among others, Trinity, Keefe, and Shinn.  (Doc. 1 in CV 20-01288.)  Plaintiff alleged, in part, that Trinity Staff Unit Managers at Rast and Buckley Units regularly and routinely do not make or refuse to make vegan meals according to the listed menu and dietary requirements.  (*Id.*)  Plaintiff claimed that poor nutrition is prevalent because *Trinity staff* refuse to provide fruit to Rast Max prisoners and refuse to make vegan meals according to the "actual menu," instead providing plain rice, pasta, boiled potatoes, and pinto beans for 2/3 of the vegan meals.  (*Id.*)  Plaintiff asserted that Trinity gives smaller portions than listed in the menus because

prisoners who work for Trinity routinely steal food, and Trinity makes up for that loss by shorting meals because prisoners on the vegan diet are "a small overall population" and "less able to congregate to cause trouble in standing up for [them]selves," and because Trinity gives bonuses to employees who save the company money by using less "material" each month, quarter, and year.  (*Id.*)

Plaintiff also alleged that on March 30, 2007, he was approved for the ovo-lacto vegetarian diet, which allowed egg and milk products but no meat.  (*Id.*)  Plaintiff claimed that in 2008, ADC "forced" him to adopt a lacto-vegetarian diet against his will and punished him for accepting or purchasing egg products by "taking" his diet.  (*Id.*)  Plaintiff asserted that in 2012, he was "forced" to go on a vegan diet "against [his] will [and] wishes."  (*Id.*)  Plaintiff alleged that he was prohibited from receiving or purchasing items containing egg or milk products because he is on the vegan diet.  (*Id.*)  Plaintiff contended his First Amendment right to freely practice his faith's dietary requirements was violated because the vegan diet was "unpalatable."  (*Id.*)

On screening the Complaint in CV 20-01288, the Court determined that Plaintiff had stated an Eighth Amendment deliberate indifference claim against Defendants Trinity and Keefe based on their alleged policy of shorting vegan meals to make up for theft of food and to save costs.  (Doc. 6 in CV 20-01288 at 13.)  The Court dismissed Plaintiff's religious exercise claims for failure to state a claim.  (*Id.* at 11-12.)

According to the Scheduling Order in CV 20-01288, all motions to join parties or to amend or supplement pleadings were to be filed by December 21, 2020.  (Doc. 15 in CV 20-01288.)  On January 8, 2021, Plaintiff filed a Motion for Leave to Amend Complaint and lodged a proposed "supplemental" complaint.  (Doc. 25 in CV 20-01288.)  On March 2, 2021, Magistrate Judge Metcalf issued a Report and Recommendation recommending that the Court deny Plaintiff's Motion to Amend because it was untimely.  (Doc. 33 in CV 20-01288.)  Magistrate Judge Metcalf noted that Plaintiff had included changes to his Complaint referring not only to recent events, but "wholesale modifications to the subject of his existing claims as well."  (*Id.* at 3.)

1
2
3
4
5
6
7
8

The Court finds Plaintiff's allegations in the First Amended Complaint in this case are duplicative of his claims in CV 20-01288 to the extent that his allegations in the First Amended Complaint in this case concern events that occurred *before* December 21, 2020, the last date on which he could have sought leave to amend the Complaint in CV 20-01288. The Court will therefore dismiss as duplicative Plaintiff's claims in Count One to the extent that they are based on events that occurred before December 21, 2020.  The Court will dismiss Count Two in its entirety because it is duplicative of the claims asserted in CV 20-01288, which were dismissed for failure to state a claim.

9

**C.**   **Class Action Certification and Appointment of Counsel**

10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff requests that the Court certify a class and appoint counsel to represent him and the class in this case.[5]  One prerequisite to maintaining a class action is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Although a plaintiff may appear on his own behalf, he may not appear as an attorney for other persons in a class action.  *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (nonlawyer had no authority to appear as an attorney for other persons in a purported class action); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (plain error to permit an inmate proceeding pro se to represent fellow inmates in a class action).  "This rule is an outgrowth not only of the belief that a layman, untutored in the law, cannot 'adequately represent' the interests of the members of the 'class,' but also out of the long-standing general prohibition against even attorneys acting as both class representative and counsel for the class." *Huddleston v. Duckworth*, 97 F.R.D. 512, 514 (N.D. Ind. 1983). Accordingly, before deciding whether this matter can proceed as a class action, the Court must first determine whether the case merits appointment of counsel.

24
25
26

There is no constitutional right to the appointment of counsel in a civil cases, *see Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982), and federal courts lack authority to require counsel to represent indigent prisoners in § 1983 cases, *Mallard v. United States*

27
28

---

[5] The Court recently denied Plaintiff's similar Motion for Class Action Certification and Request for Appointment of Counsel in CV 20-01288.  (Doc. 48 in CV 20-01288.)

*Dist. Court*, 490 U.S. 296, 298 (1989).  Thus, the Court cannot compel an attorney to represent Plaintiff or a class in this case.  In proceedings in forma pauperis, the Court may request an attorney to voluntarily represent any person unable to afford one.  28 U.S.C. § 1915(e)(1).

The Court may request an attorney represent Plaintiff only if "exceptional circumstances" are present.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved.  *Id.*  "Neither of these factors is dispositive and both must be viewed together before reaching a decision."  *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).  The burden of demonstrating exceptional circumstances is on Plaintiff.  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  Circumstances common to most prisoners, such as a lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.  *See id.*; *see also Wilborn*, 789 F.2d at 1331 ("If all that was required to establish successfully the complexity of the relevant issues was a demonstration of the need for development of further facts, practically all cases would involve complex legal issues.").

It does not appear at this time that exceptional circumstances are present to support appointment of counsel in this case.  The likelihood of success is not sufficiently apparent, at this point, to qualify as an exceptional circumstance, and there is nothing to indicate that purported class members will be less capable than other pro se prisoners or that their claims are more complex than those advanced by other prisoners.  Thus, the Court will deny Plaintiff's request for class certification and appointment of counsel.[6]

---

[6] Plaintiff also asks that certain other prisoners "be listed as co-Plaintiffs" in this case once they file their own Complaints.  The Court will deny this request.  As discussed above, this case was severed from a case in which Plaintiff and other prisoners filed a joint Complaint.  For the same reasons discussed in the April 23, 2021 Order, the Court will deny Plaintiff's request to allow him to proceed with other prisoners as co-Plaintiffs.  Plaintiff further requests the professional work addresses of each expert and physician he identifies in the First Amended Complaint so that he may write and ask them to donate

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.     Defendant Shinn**

**1.     Official Capacity Claims**

A suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* at 165. To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). That is, a claim against an individual in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Plaintiff cannot maintain a lawsuit for *damages* against ADC employees or specific Defendants in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983.") (citation omitted). Plaintiff may maintain a lawsuit against Defendant Shinn in his official capacity for *prospective* declaratory and injunctive relief because under the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). But not all declaratory and injunctive relief is prospective. The exception is

their time to help improve nutrition within ADC and as potential expert witnesses. The Court will deny this request. The Court is neither obligated nor permitted to assist Plaintiff in presenting or proving his claims.

**TERMPSREF**

1   intended to prevent continuing violations of federal law and "does not permit judgments

2   against state officers declaring that they violated federal law in the past." *P.R. Aqueduct*

3   *& Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Hindes v. FDIC*,

4   137 F.3d 148, 166 (3d Cir. 1998) ("The type of prospective relief permitted under *Young*

5   is relief intended to prevent a continuing violation of federal law.").

6       The Court will require Defendant Shinn, in his official capacity only, to answer

7   Plaintiff's claims for prospective injunctive relief.

8                   **2.    Individual Capacity Claims**

9       A suit against a defendant in his or her *individual* capacity seeks to impose personal

10   liability upon the official. *Kentucky v. Graham*, 473 U.S. at 165-66.  For a person to be

11   liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply

12   conclusions, that show that the individual was personally involved in the deprivation of his

13   civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

14       To state a valid claim under § 1983, a plaintiff must allege that he suffered a specific

15   injury as a result of specific conduct of a defendant and show an affirmative link between

16   the injury and the conduct of that defendant.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72,

17   377 (1976).  There is no respondeat superior liability under § 1983, and therefore, a

18   defendant's position as the supervisor of persons who allegedly violated Plaintiff's

19   constitutional rights does not impose liability.  *Monell*, 436 U.S. 658; *Hamilton v. Endell*,

20   981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

21   "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must

22   plead that each Government-official defendant, through the official's own individual

23   actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

24       Plaintiff has not alleged that Defendant Shinn personally participated in a

25   deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act,

26   or formed policies that resulted in Plaintiff's injuries.  Thus, the Court will dismiss without

27   prejudice Plaintiff's individual-capacity claims against Defendant Shinn.

28   . . . .

### E.    Defendant Puckett

Plaintiff alleges that Defendant Puckett was responsible for reviewing and approving prisoner meal plans and regularly inspecting and training *staff* to correct deficiencies.  Plaintiff claims he notified Defendant Puckett about the quality of meals by submitting a Health Needs Request on March 14, 2021, during his hunger strike.  These allegations are too vague and conclusory to support a conclusion that any conduct by Defendant Puckett resulted in any injury to Plaintiff.  Plaintiff does not allege that Defendant Puckett was *solely* responsible for creating or changing prisoner meal plans. Indeed, Plaintiff fails to allege facts to support that Puckett has any role in meals provided by Trinity and Keefe staff.  Moreover, Plaintiff does not specify the information he included with his March 14, 2021 Health Needs Request, the response he received, if any, and how the response or lack of response resulted in any injury to him.  Thus, Plaintiff has failed to state a claim against Defendant Puckett, and this Defendant will be dismissed.

### IV.    Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated an Eighth Amendment claim against Defendants Keefe and Trinity based on his allegations that *since* December 21, 2020, Defendants have shorted prisoner meals to make up for theft of food, decrease costs, and increase profits.  The Court will require Defendants Keefe and Trinity to answer the First Amended Complaint and will require Defendant Shinn in his official capacity only to answer Plaintiff's claims for prospective injunctive relief.

### V.    Warnings

### A.    Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

. . . .

**B.** **Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.** **Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.** **Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 3) is **granted**.

(2)     As required by the accompanying Order to the appropriate government

agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3)     Plaintiff's requests for class certification, appointment of counsel, and joinder of other prisoners as co-plaintiffs are **denied**.

(4)     Plaintiff's claims based on events that allegedly occurred ***before*** December 21, 2020, are **dismissed** as duplicative of Plaintiff's claims in CV 20-01288.  Count Two is **dismissed** as duplicative of Plaintiff's related claims in CV 20-01288.

(5)     Plaintiff's claims against Defendant Shinn in his individual capacity are **dismissed**.  Defendant Puckett is **dismissed** without prejudice.

(6)     Defendants Trinity and Keefe must answer Count One to the extent that the allegations are based on events that occurred ***after*** December 21, 2020.  Defendant Shinn in his official capacity only must answer Plaintiff's claims for injunctive relief.

(7)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 7), this Order, and both summons and request for waiver forms for Defendants Trinity, Keefe, and Shinn.

(8)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the First Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(10)    The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(11)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(12)   A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(13)   The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) or Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(14)   Defendants Trinity, Keefe, and Shinn must answer the relevant portions of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(15)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

TERMPSREF

1          (16)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to

2    Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

3    authorized under 28 U.S.C. § 636(b)(1).

4          Dated this 7th day of May, 2021.

 

 

 

 

                                Douglas L. Rayes
                                United States District Judge