Law Offices
**HINSHAW & CULBERTSON LLP**
2375 E. Camelback Rd., Suite 750
Phoenix, AZ 85016
602-631-4400
602-631-4404
raoyama@hinshawlaw.com
bdunn@hinshawlaw.com

Randy J. Aoyama (020096)
Bradley L. Dunn (028897)
Attorneys for Defendants Trinity Services Group,
Keefe Commissary Network, LLC and David Shinn

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Charles Goff, | No. CV-21-0702-PHX-DLR(JFM) |
| Plaintiff, | |
| v. | **DEFENDANTS TRINITY SERVICES GROUP, KEEFE COMMISSARY NETWORK. LLC AND DAVID SHINN'S MOTION FOR SUMMARY JUDGMENT** |
| Trinity Services Group, et al., | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendants Trinity Services Group ("Trinity"), Keefe Commissary Network, LLC (Keefe) and David Shinn (collectively "Defendants"), by and through undersigned counsel, hereby request that the Court enter summary judgment in their favor regarding Plaintiff Shawn Charles Goff's ("Plaintiff") Complaint against them. Summary judgment in favor of Defendants is warranted because:

- Keefe has no involvement in food service within the ADCRR;

- Plaintiff has not exhausted his administrative remedies related to the Common Fare Meals;

- Regarding his Eighth Amendment claim, Plaintiff cannot meet the objective test that the alleged deprivation was "sufficiently serious" or the subject test that Defendants acted with deliberate indifference to Plaintiff's health or safety;
- Plaintiff's claims do not meet the test articulated in *Monell v. Department of Social Services;* and

- Plaintiff's claim for punitive damages is not warranted on this record relative to Defendants' actions after December 21, 2020.

This motion is supported by the separate Statement of Facts ("SOF") and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   RELEVANT BACKGROUND AND FACTS

This case is the second of two (2) cases filed by Plaintiff against Defendants. Plaintiff's previous suit is Case Number CV-20-1288-PHX-DLR-JFM and was filed on June 25, 2020. On February 17, 2022, the Court granted in part and denied in part Defendants' Motion for Summary Judgment and granted Plaintiff summary judgment on the exhaustion issue in that case .[1] As such, CV-20-1288 is still pending and there is a trial conference set for July 28, 2022.

Plaintiff filed his original Complaint in the instant matter on April 16, 2021 (Doc. 2). The Court has ordered that "Plaintiff's claims based on events that occurred before December 21, 2020, are **DISMISSED** as duplicative of Plaintiff's claims in CV-20-1288." (Doc. 39 at 3:21-23) The Court further ordered "that Defendants Trinity and Keefe shall answer count One [of the Second Amended Complaint] to the extent the allegations are based on events that occurred after December 21, 2020 [and that] Defendant Shinn shall answer, in his official capacity only, Plaintiff's claims for injunctive relief." (*Id.* at 3:26 – 4:1)(emphasis in original) Defendants filed their Answer to the Second Amended Complaint on December 29, 2021 (Doc. 43)

Plaintiff's claim, as interpreted by this Court and by Plaintiff's pleadings, is an "Eighth Amendment claim against Defendants Keefe and Trinity based on his allegations

---

[1] The ruling on the Motion for Summary Judgment in CV-20-1288 was also filed in this case. (Doc. 48). But, Defendants have not previously filed a motion for summary judgment in the instant case so the Court has not ruled on the issues in this Motion relative to events that occurred after December 21, 2020.

1042694\310861295.v1

that since December 21, 2020, Defendants have shorted prisoner meals to make up for theft of food, decrease costs, and increase profits." (Doc. 8 at 12:15-18) Of note, on August 1, 2020, the Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR") replaced the Vegan and Kosher diets with the Common Fare Meal ("CFM"). As such, the CFM has been served at times relevant to this suit (i.e. since December 21, 2020).

Plaintiff initiated the instant suit on April 16, 2021 (SOF ¶1). Plaintiff is an individual lawfully incarcerated at ASPC-Lewis, Rast Unit (SOF ¶2)(Doc 24 – Second Amended Complaint). Plaintiff requests compensatory damages, punitive damages and injunctive relief. (SOF ¶ 3) Plaintiff's Second Amended Complaint sets forth general claims of injuries of Plaintiff and eleven (11) co-Plaintiffs, alleging that "Defendants have shorted Plaintiff(s) CFM since it began on 8-1-2020 & all meals, generally, causing decreased nutrition, deterioration of Plaintiff(s) existing joint, ligament, tendon, muscle, & bone cyst health issues, spreading of existing dental infection exponentially, prediabetic symptoms, severe joint pain increase, especially for Co-Plaintiff DeYoung, who has Stage 4 cancer." (SOF ¶4) Regarding his claimed injuries, Plaintiff alleges various physical damages and potential health detriments related to the alleged "shorting of nutritious food resulting ting in loss of key vitamins, minerals, & proteins. (SOF ¶ 5) He generally alleges that this "shorting" caused "unnecessary weight loss, diabetic symptoms, inability to properly heal & fight off infection in upper jaw, or heal joint, bone, & ligament degeneration and knees & increase in severe joint pain due to inability to properly heal &/or prevent further degeneration. Known potential cancer risks from processed foods." (SOF ¶6) Plaintiff has not disclosed any medical records that set forth these alleged symptoms, nor has he disclosed any experts to establish medical causation related to the CFM. (SOF ¶7).

1042694\310861295.v1

## II.     LEGAL DISCUSSION

### A.     Summary Judgment Standard.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). The movant must inform the court of the basis for its motion and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Id*. The movant can also discharge its initial burden by pointing out to the court there is an absence of evidence to support the nonmoving party's case. *Id*. at 325.

If the movant meets this burden, the party opposing summary judgment must offer evidence of specific facts sufficient to raise a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A *pro se* plaintiff cannot rely only on his allegations but must support his complaint by presenting significant and probative evidence. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir. 1984) *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). The nonmoving party must go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. As elaborated below, even when viewing the facts in a manner most favorable to Plaintiff, the Court should enter summary judgment in Defendants' favor.

4

**B.** **Keefe is an improper party to this suit: it has nothing to do with food preparation within the ADCRR.**

Plaintiff alleges that Keefe is a "Commissary provider" that owns Trinity. (SOF ¶8)(Second Amended Complaint at p. 2). In fact, Keefe is not the "owner" of Trinity and Keefe has no involvement in food preparation at ASPC-Lewis, or anywhere within the ADCRR. (SOF ¶9) Plaintiff must properly allege and support a "causal connection between each individual prison official's actions and the eighth amendment violation." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988). Plaintiff cannot support his claim that Keefe was in any way involved in food preparation at ASPC-Lewis, because it is factually untrue. Keefe is an entity independent from Trinity and has no involvement in prison food services.

In the previous case, CV-20-1288, the Court agreed with Defendants and granted summary judgment for Keefe, stating:

> Plaintiff does not dispute that Keefe has no involvement in food preparation anywhere within the prison, nor does he dispute that ADCRR contracts with Trinity to provide food services to prisoners, including those at ASPC-Lewis….Regardless of whether Keefe is the parent company of Trinity, based on Plaintiff's allegations and his concessions that Trinity is contracted to provide prisoner meals and Keefe is not involved in food preparation, Keefe is not a proper defendant, or, at most, Keefe would be a duplicative defendant and unnecessary. (SOF ¶10)

Since that ruling, Plaintiff has not established any connection between Keefe and the food preparation within the ADCRR. As such, Keefe is entitled to summary judgment in this instant matter as it was granted in CV-20-1288.

**C.** **Plaintiff has failed to exhaust his administrative remedies regarding the Common Fare Meals.**

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA's exhaustion requirement

5

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). Plaintiff has failed to comply with the terms of the PLRA and fully exhaust all claims related to being served allegedly deficient meals.

> 1.   Exhaustion Standard.

"Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle, supra,* at 524, 122 S.Ct. 983." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), internal citations omitted. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without posing some orderly structure on the course of its proceedings." *Id*. at 90–91.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.
>
> *Id*. at 95.

1042694\310861295.v1

2.    Grievance Procedure within the ADCRR.

During the relevant time period of Plaintiffs claims, DO 802 (eff. Oct. 16, 2016), governed the inmate grievance procedure. DO 802 sets forth the process that inmates are required to follow to complete the ADCRR's grievance procedure through the Director's level for non-medical or "standard" grievances, such as Goff's complaints against Defendants. (SOF ¶11) The inmate grievance procedure "is designed to address inmate complaints related to any aspect of institutional life or condition of confinement which directly and personally affects the inmate grievant, including written instructions (i.e., Department Orders, Director's Instructions, Post Orders, and Technical Manuals), procedures, and the actions of staff." (DO 802 § 1.1.) (SOF ¶12)

DO 802 requires that the inmate must first attempt to resolve any "complaints through informal means including, but not limited to, discussion with staff in the area most responsible for the complaint or through the submission of an Inmate Informal Complaint Resolution, Form 802-11." (DO 802 § 2.1)(SOF ¶13) In the event an inmate is unable to resolve a complaint through informal means, the inmate may submit an Informal Complaint on an Inmate Informal Complaint Resolution form to the Correctional Officer ("CO") III in the inmate's prison unit within ten workdays from the date of the action that caused the complaint. The inmate must attach copies of all documentation to support the inmate's complaint. (DO 802 § 2.2.) (SOF ¶14) The CO III investigates the informal complaint, attempts to resolve it informally, and provides a response to the inmate within fifteen workdays of its receipt. (DO 802 § 2.3.2.) (SOF ¶15)

If an inmate's informal complaint cannot be resolved informally, the inmate may submit a formal inmate grievance to the unit CO IV Grievance Coordinator within five workdays from the date the inmate receives the CO III's response to the inmate's informal complaint. (DO 802 § 3.2.) (SOF ¶16) Within fifteen workdays after the receipt

7

of the formal inmate grievance, the Deputy Warden issues a written response to the inmate. (DO 802 §3.6.) (SOF ¶17) If the inmate receives an unfavorable response from the Deputy Warden, the inmate may appeal the response to the Director within five workdays of receipt of the formal inmate grievance response from the Deputy Warden. (DO 802 § 4.1.) An inmate may not file an appeal to the Director until the grievance procedure within the inmate's assigned unit and institution has been exhausted. (SOF ¶18) Within thirty calendar days, the Central Office Appeals Officer must prepare a response and submit it to the Director or Director's designee for signature. (DO 802 § 4.4.) (SOF ¶19) If an inmate does not receive a response from the ADCRR within the time limits set in the Inmate Grievance Procedure, the inmate is allowed to proceed to the next review level. (DO 802 § 1.10.1.) The time to proceed to the next review level begins to run the day after a response was due back to the inmate. (DO 802 § 1.10.1.) (SOF ¶20) The Director's response is final, and constitutes an exhaustion of all remedies within the ADCRR for standard grievances. (DO 802 § 4.6.) (SOF ¶21)

Pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), inmates must completely exhaust the Department's internal grievance and administrative processes prior to filing any complaint with any State Board or Federal Court. (DO 802 § 1.5.) (SOF ¶22)

3.   <u>Plaintiff has failed to show that he had fully appealed any grievances related to CFM</u>.

ADCRR conducted a search of the ADCRR's Central Office Grievance Appeals records for any grievance appeals to the Director or Director's Level submitted by Plaintiff involving any grievance concerning food-related issues since August 1, 2020, the date when ADCRR instituted the Common Fare Meal. (SOF ¶23) The ADCRR found that, on November 3, 2020, Plaintiff submitted an "Inmate Informal Complaint Resolution" related to the Common Fare diet. A correctional officer responded on November 16, 2020. (SOF ¶24)

8

Plaintiff's formal grievance set forth substantially the same allegations as the Second Amended Complaint, including alleged shorting of meals and lack of nutrition. (SOF ¶25) The Deputy Warden denied the grievance, stating that the Common Fare Diet meets Plaintiff's religious diet needs and that "Food Service cannot make [Plaintiff] and OVO-Lacto diet because it is no longer an option." (SOF ¶26) The Deputy Warden also advised that "this issue cannot be resolved" and that Plaintiff "may elect to appeal within five workdays of receipt." (SOF ¶27)

There are no entries in the ADCRR's Central Office Grievance Appeal records to evidence that Plaintiff submitted any grievance appeals to the Director or Director's Level, nor were there any other grievance appeals related to food-related complaints after December 21, 2020. (SOF ¶28) Plaintiff's failure to submit any grievance appeals to the Director or Director's Level in response to the informal complaint resolution process related to the Common Fare diet means that he failed to exhaust administrative remedies as to any claim related to the Common Fare Meal . (*See* DO 802 § 1.5.) (SOF ¶29) A prisoner cannot fully exhaust his administrative remedies without expressly complying with the system in place. Plaintiff has not done so. On this basis alone, Defendants are entitled to summary judgment.

### D.   Plaintiff's Constitutional Claim Fails

#### 1.   Governing Standards.

To prevail on a claim against a private entity serving a traditional public function, a plaintiff must meet the test articulated in *Monell v. Department of Social Services,* 436 U.S. 658, 690–94 (1978); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). The plaintiff must show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, the plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) the public entity had a policy or custom; (3) the

9

policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1110–11 (9th Cir. 2001).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (*citing Farmer v. Brennan*, 511 U.S. 825, 847 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. at 832; *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

To state an Eighth Amendment claim, a plaintiff must meet a two-part test. First, the plaintiff must make an "objective" showing that the alleged deprivation is "sufficiently serious." *Farmer*, 511 U.S. at 834. To be sufficiently serious to form the basis of an Eighth Amendment violation, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (citing *Rhodes*, 452 U.S. at 347). Second, the plaintiff must make a "subjective" showing that the prison official acted with a "sufficiently culpable state of mind"; that is, that the defendant acted with deliberate indifference to the plaintiff's health or safety. *Farmer*, 511 U.S. at 834. To show deliberate indifference, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to prisoner health or safety. *Id.* at 837. To satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.* Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's health or safety. *Id.* at 835.

Prison officials may avoid Eighth Amendment liability for the harm suffered by a prisoner if they show that: (1) "they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) they responded reasonably to the risk. *Id.* at 844.

"Adequate food is a basic human need protected by the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). Prisoners must be provided food that is nutritionally adequate to maintain health. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "[I]nmates rely on prison officials to provide them with adequate sustenance on a daily basis[,]" and "[t]he repeated and unjustified failure to do so amounts to a serious deprivation." *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009). Whether food is sufficient to maintain health is often determined by its nutritional and caloric values. *See Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1200–01 (W.D. Wash. 2010) (finding that, in light of the prisoner-plaintiff's body weight and caloric needs, the prison's kosher meals, which provided an average of 2,380–2,910 calories per day, were sufficient to maintain his health); *see also Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir. 1986) (finding two meals a day sufficient if nutritionally and calorically adequate); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (finding one meal a day for 15 days, where the meal contained 2,000 to 2,500 calories and was sufficient to maintain health and constitutionally adequate). A diet with insufficient calories for an extended period raises serious constitutional concerns. *See Hutto v. Finney*, 437 U.S. 678, 683–84 (1978) (prison diet that consisted of just 1,000 calories a day may be tolerable for a few days but "intolerably cruel for weeks or months").

2.      Plaintiff cannot establish the objective and subject prongs of his Eight Amendment claim.

a.      Objective Prong

In a conditions-of-confinement claim, the objective prong looks at whether "the deprivation alleged" is "sufficiently serious." *Farmer*, 511 U.S. at 834. The condition complained of must pose a substantial risk of serious harm. *Id*; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim.") (internal citations and quotations omitted); Plaintiff's allegations do not concern extreme deprivations of this nature. Plaintiff is incapable of satisfying the objective standard because he cannot demonstrate that the alleged problems with the CFM was sufficiently serious. Indeed, after the resolution of his grievance relative to the CFM, there is no evidence that Plaintiff was sufficiently concerned to appeal the grievance decision to the Director.

Further, Plaintiff has not set forth specifics of what medical conditions were allegedly caused by the alleged lack of nutrition. Although it is difficult to discern exactly what conditions were allegedly suffered by Plaintiff as opposed to the eleven other "co-Plaintiffs," it seems that Plaintiff is alleging unnecessary weight loss, diabetic symptoms, inability to properly heal & fight off infection in upper jaw, or heal joint, bone, & ligament degeneration and knees & increase in severe joint pain due to inability to properly heal &/or prevent further degeneration. Known potential cancer risks from processed foods." Although Plaintiff had claimed in CV-20-1288 that he had lost almost 20 pounds, from 178 pounds in May 2019 to 157 pounds in September 2019, he does not provide information about his alleged weight loss since December 21, 2020. Significantly, the record from CV-20-1288 shows that his weight was 178 pounds on December 17, 2020. (SOF ¶30) Although inadequate nutrition could cause weight loss, Plaintiff has not alleged any specific weight loss in the instant case. Further, Plaintiff has

12

no experts in medical causation to establish that any of other symptoms, such as diabetic symptoms, inability to properly heal and potential cancer risks were somehow caused by alleged nutritional deficiencies in the meals he received or conduct attributable to Defendants. Also, Plaintiff has not provided medical records from after December 21, 2020 that relate to his alleged medical issues. *See Ploof v. Ryan, No. CV 13-00946-PHX-DGC (JZB), 2016 U.S. Dist. LEXIS 12150, at \*43 (D. Ariz. Feb. 2, 2016)*(Plaintiff "has not produced any evidence from any doctor showing that any doctor believes that the diet Plaintiff is getting is inadequate or that the diets that have been offered Plaintiff are inadequate. Under these circumstances, an Eighth Amendment claim cannot lie.")

Plaintiff also cannot satisfy the objective standard for his nutritional adequacy claim because Trinity's dietician analyzed the CFM diets to ensure that they met or exceeded the ADCRR contractual requirements and relevant standards including the recommended dietary allowances from the Food and Nutrition Board, National Academy of Sciences-National Research Council, National Academy of Science – National Research Council, the American Correctional Association and The National Commission on Correctional Health Care. (SOF ¶31). For example, the Common Fare Menus are designed to meet or exceed the ADCRR requirement of $2,800 \pm 200$ calories per day. (SOF ¶32) This level of calories is consistent with cases that have been found sufficient to maintain health. *See Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1200–01 (W.D. Wash. 2010) (finding that, in light of the prisoner-plaintiff's body weight and caloric needs, the prison's kosher meals, which provided an average of 2,380–2,910 calories per day, were sufficient to maintain his health); *see also Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (finding one meal a day for 15 days, where the meal contained 2,000 to 2,500 calories and was sufficient to maintain health and constitutionally adequate). Moreover, the calories of the CFM far exceeds 1,000 calories per day. *See Hutto v. Finney*, 437 U.S. 678, 683–84 (1978) (prison diet that consisted of just 1,000 calories a

13

1   day may be tolerable for a few days but "intolerably cruel for weeks or months"). Based

2   on the foregoing, summary judgment in favor of Defendants is warranted.

3                           b.      Subjective Prong

4          Plaintiff is also incapable of satisfying the subjective deliberate indifference

5   standard applicable to his claim because Defendants did not knowingly disregard an

6   excessive risk to Plaintiff's health or well-being. "Deliberate indifference is a high legal

7   standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Even gross negligence

8   is insufficient to establish deliberate indifference to serious medical needs. *Wood v.*

9   *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). To satisfy this standard, Plaintiff must

10  prove that Defendants knowingly disregarded a substantial risk of harm to Plaintiff.

11  *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057 (9th Cir. 2004). In addition, the

12  Plaintiff must also show that Defendants' actions were the actual and proximate cause of

13  his injuries. *See Halla v. Schriro*, 2006 WL 3735983 at *4 (D. Ariz. Dec. 15, 2006).

14  Plaintiff cannot satisfy this high standard relative to Defendants because, other than

15  Plaintiff's conclusory allegations, nothing in the record for this case supports the

16  allegation that Defendants were deliberately indifferent to Plaintiff's health or safety,

17  especially as it relates to the time period starting December 21, 2020. Certainly, Plaintiff

18  cannot establish through expert evidence that Defendants' actions were the actual and

19  proximate cause of Plaintiff's alleged injuries. Further, to the best of Trinity's employee's

20  knowledge, information and belief, each of the meals prepared for Plaintiff during his

21  confinement within the ADCRR were complete, nutritionally adequate and complied

22  with the approved menu in all respects prior to leaving Trinity's possession, custody and

23  control, except to the extent to that item substitutions were necessitated by production

24  problems, product availability or security issues. Any item substitutions necessary under

25  these circumstances are generally made from the same food group specified under the

26

27

14

menu and are of comparable nutritional value to the item originally specified for service. (SOF ¶33)

### 3.     Plaintiff fails to meet the requirements of *Monell*

Plaintiff has not demonstrated that he was deprived of a constitutional right. As discussed above, Defendants deny that they deprived Plaintiff of his constitutional right to adequate food. Plaintiff's allegations do not establish the necessary objective and subjective prongs for an Eighth Amendment claim, particularly with respect to the time period after December 21, 2020. Again, Plaintiff has not provided specifics about any weight loss since that date and he has not supported his medical claims with expert evidence or even medical records.

Plaintiff has not shown that Trinity had a "policy or custom" that violated his rights. A policy is "a deliberate choice to follow a course of action" made by the officials or entity "responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year

amount to a custom or practice of deliberate indifference) (citing *Oviatt*, 954 F.2d at 1478). But "[t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual." *Id.* Whether actions by entity officers or employees amount to a custom "depends on such factors as how longstanding the practice is, the number and percentage of officials engaged in the practice, and the gravity of the conduct." *Mi Pueblo San Jose, Inc. v. City of Oakland*, C-06-4094 VRW, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006).

At no time relevant to this action, or otherwise, did Trinity maintain a policy, practice or custom of knowingly preparing meals for the ADCRR inmates that were nutritionally deficient. To the contrary, Trinity maintained a policy, practice and custom at all relevant times of preparing nutritionally adequate meals for the ADCRR inmates that are (a) prepared in a manner that complied with all ADCRR food service and security polices and all pertinent government safety and sanitation regulations; (b) consistent with any properly prescribed medical dietary restrictions and (c) are wholesome, nutritious and meets or exceeds industry food quality standards. (SOF ¶34) Further, Trinity does not maintain a policy of shorting Common Fare Meals to make up for the theft of food and to save costs at ASPC-Lewis or anywhere within the ADCRR. (SOF ¶35) Plaintiff has not made a showing of a longstanding practice. Moreover, Plaintiff's allegations relating to only himself is insufficient, because, as noted above in *Oyenik*, a custom cannot be inferred from a pattern of behavior toward a single individual.

Plaintiff has not shown any policy or custom that amounted to deliberate indifference to his constitutional right. As discussed above, Plaintiff has not established that Defendants acted with deliberate indifference toward Plaintiff.

Plaintiff has not shown that a policy or custom was the moving force behind the alleged constitutional violation. Defendants deny that Plaintiff has demonstrated a

16

1    deprivation of a constitutional right. Certainly, there was not policy or custom that was

2    the "moving force" for a constitutional deprivation especially after December 21, 2020.

3          **E.**      **Plaintiff is not Entitled to Punitive Damages.**

4          Plaintiffs seeks punitive damages in his Second Amended Complaint. Punitive

5    damages are available under § 1983 against an individual if her "conduct is shown to be

6    motivated by evil motive or intent, or when it involves reckless or callous indifference to

7    the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). There is

8    no evidence whatsoever that Defendants acted with evil intent or reckless indifference to

9    Plaintiff's rights with respect to his claims, particularly after December 21, 2020. The

10    alleged conduct, on this record, cannot be found to "be motivated by evil motive or

11    intent, or…involves reckless or callous indifference to the federally protected rights of

12    others." Defendants should be granted summary judgment on the punitive damage claim.

13    **III.**    **CONCLUSION**

14          For the reasons set forth above, Defendants Trinity Services Group, Keefe

15    Commissary Network, LLC and David Shinn respectfully request the Court enter

16    summary judgment in their favor, dismissing them with prejudice from this case.

17          DATED this 23rd day of June, 2022.

18                              HINSHAW & CULBERTSON LLP

19

20                              /s/ Randy J. Aoyama

                                   Randy J. Aoyama

21                              Bradley L. Dunn

                                   *Attorneys for Defendants Trinity Services*

22                              *Group, Keefe Commissary Network, LLC*

                                   *and David Shinn*

23

24

25

26

27

1042694\310861295.v1

1

**CERTIFICATE OF SERVICE**

2

      I certify that on the 23rd day of June, 2022, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing, with a copy submitted by U.S. Mail to the following recipient:

4

Shawn Charles Goff #186716

Buckeye AZ-Lewis-ASPC-Rast

5

Rast Unit

P.O. Box 3600

6

Buckeye, AZ 85326

*Plaintiff Pro Se*

7

8

By  /s/ Tammy Rivera

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1042694\310861295.v1